Pearson, C. J.
 

 The plea, since the last continuance, by which the defendants claim the benefit of what is commonly called the “'Stay Law,” presents for our decision the question of the constitutionality of an act of the last session of the
 
 *369
 
 General Assembly — entitled “ An Act to provide against the sacrifice of property, and to suspend proceedings in certain cases.” The same question was raised in every case decided at this term, where the judgment in the Court below is affirmed, by motions for j udgment and that execution shall be issued.
 

 Whether, in the present condition of the country, the statute be expedient, is a question of which we have no right to judge. Our province is to give judgment on the question of the constitutional power of the Legislature to pass the statute.
 

 In the discharge of this duty, we are relieved by the fact, that a question of such importance is not now presented for the first time, so as to put upon us the responsibility of making a decision, on the strength of our own convictions; for we find that the -line has been plainly marked, in fact
 
 “
 
 blazed out” by many previous adjudications, so that it can be easily followed, and all we have to do, is to make our application of well established principles.
 

 The right, and the duty of this Court, to give judgment on the -constitutional power of the Legislature in making statutes, is established by so many, elaborated opinions of this Court, and of the Supreme Court of the United States, and of our sister States, as to make a further discussion or citation of authorities a useless attempt at a display of learning; so we assume that question to be settled.
 

 Our opinion is, that the statute under consideration, so far as it opposes the right of the plaintiff to a judgment in the Court below, or the motions for a judgment in this Court and for execution, is void and .of no effect, because it is in violation of the Constitution of the United States, and of the Constitution of the Confederate States, which, in this respect, is the same, and, also, of the Constitution of this State.
 

 1st. It is patent, by the face of the statute, that it does “ impair the obligation of contracts.” This is settled.
 
 Jones
 
 v. Crittenden, 1 Car. Law Rep., 385. In that case, the argument is exhausted, and we only add “ we concur in it.”
 

 
 *370
 
 It is suggested that this case is distinguishable, on the ground, that when the statute in question was passed, the country was in a state of established revolution, or in a state of “ contemplated revolution,” in reference to which the Legislature acted, which revolution has been carried out and consummated by a subsequent ordinance of the Convention, by force of which all acts done in reference to, and in anticpation of, the revolution, are ratified and confirmed as incidents thereto.
 

 This proposition, however much weight it may be entitled to in a political forum, cannot, by reason of its generality, be appreciated by a legal tribunal, and a mind accustomed to the investigation of questions of law, “ grasps at it, as at a shadow.” But to avoid a complication of our question, we pass over the legal difficulty of the maxim “ that which is void cannot be confirmed,” and let it be admitted, that on the 20th of Maj7, when the ordinance of the Convention, by which this State was withdrawn from the government of the United States, went into effect, the statute under consideration was in full force and effect, so far as restrictions by the Constitution of the United States were concerned, in the same manner and to the same extent as if the State of North Carolina had never been a member of, or in any way connected with the Government of the United States, so as to bring up the naked question, what was the legal effect of the ordinance adopting the Constitution of the provisional government of the Confederate States, made on the same day, but some few hours after, the ordinance above referred to. The ordinance afterwards passed by which the permanent Constitution was adopted. Here was a period, say of seven hours, during all of which time, the State of North Carolina, in reference to her connection, either with the United States, or with the Confederate States, was absolutely sovereign, and the statute in question, by the admission made for the sake of argument, was in full force and effect. Is it not clear to the certainty of a demonstration, that the effect of the ordinance adopting the Constitution of the Confederate States, which in express words provides “ No State shall pass any law impairing the obliga
 
 *371
 
 tion of contracts,” was to abrogate or make void and of no effect, this short-lived statute, on the ground that it was inconsistent with, and in violation of the Constitution, then adopted?
 

 The position that the words of the Constitution are, “ No State
 
 shall
 
 pass any law,” using the word in the future tense, therefore, any law which had already passed, although it impaired the obligation of contracts, was to be allowed to continue in operation, is a play upon words, and is not worthy of the gravity of the subject.
 

 The.evil which the Constitution intended to guard against, at present, was not the
 
 act of passing the
 
 law,
 
 but the effect incident to the operations of such a
 
 law, and in respect to this, whether it was passed before or after the adoption of the Constitution was immaterial. In illustration, suppose during its unfettered existence of seven hours, the State had passed a law making tobacco a legal tender in the payment of debts. After the adoption of the Constitution of the Confederate States, would tobacco have still continued to be a legal tender ? most assuredly not, for the time of the passage of the law was immaterial. If all laws either opposed to the express provisions of the Constitution then adopted were to continue in operation because they had been passed beforehand — all of the acts of the General Assembly should have been subjected to rigorous scrutiny before the State was admitted into the Confederacy.
 

 It is a well illustrated principle of constitutional law, that upon the adoption of a new constitution, or an amendment of the constitution, any and all laws previously existing, are
 
 ipso facto
 
 annulled, and become void so far as they are opposed to and conflict with the new or amended constitution- — on the same reason that the statute repeals all statutes previously enacted inconsistent with its provisions, and a will revokes all former wills — or an order from head quarters countermands one previously given, so far as it conflicts with its meaning and intention and obvious policy.
 

 2. But, apart from the constitution of the Confederate States,
 
 *372
 
 "We are of opinion that the statute is in plain violation of the ■constitution of the- State, on two grounds.
 

 1. “ The declaration of rights ” fixes the principles of free ■government, by affirming in section 12, “ no free man ought to be deprived of his life, liberty or property, but by the law •of the land.”
 

 It is settled that, by force of this section, the Legislature ■has not the power to deprive A of his horse and give it to B, or to deprive E of his office and give it to C, or D of his debt and give it to E — in other words, the Legislature cannot deprive a citizen of his vested rights of property. See
 
 Hoke
 
 v.
 
 Henderson, 4
 
 Dev. 1, and the cases there cited. So, the question is, can the Legislature deprive a citizen of his debt, which is a vested right, and a part of his estate or property, in the ■broad sense in which the word is used in the section above cited, including all rights of person and rights of property, either by conferring the right on a third person, or by releasing it to the debtor, or by taking from the creditor the right to have a judgment and execution for his debt according to the course of the courts. Manifestly, if a creditor is deprived of his right to have judgment and execution for his debt, he is thereby deprived of the right to his debt, which consists in his right to enforce payment, and the ground of hope that this deprivation is not to be absolute and perpetual, but only “ until otherwise provided by law,” which is held out by the wording of the statute, does not at all vary the question of power, because the power to deprive one of his debt for an indefinite time is the same as the power to deprive him of it absolutely, and so far as the creditor is concerned, it makes no difference whether the debt be given to a third person or be releásed to the debtor; the violation of the rights of the creditor is the same, and the power that can do the one can do the other.
 

 2d. The statute is unconstitutional, because it violates the 4th section of the
 
 “
 
 declaration of rights.” “ The legislative, executive and
 
 supreme judicialpowers
 
 of government ought to •be forever separate and distinct from each other.”
 

 
 *373
 
 Suppose the Legislature should pass a statute that the Governor, in the recess of the General Assembly, shall not embody the militia of the county of Eowan, or shall irot embody the militia of the State, or shall not do any act of his office, would “ the legislative and executive powers of the government be kept separate and distinct from each other?” Or suppose the Legislature should pass a statute, that the Supreme Court shall not give judgment and issue execution in the case of
 
 Barnes
 
 v.
 
 Barnes,
 
 or shall not give judgment and issue execution in any actions for debts due on bonds, promissory notes, &c., where in the trial of the case, in the court below, the intervention of a jury was required, or shall not give judg2nent and issue executions in any suit or action, founded either on contract or tort, brought before it by appeal from the superior court, would the legislative and supreme judicial powers of government be kept separate and distinct ? In other words, would not the assertion and exercise of thispowon the part of the Legislature destroy the independence of the executive and supreme judicial powers of the govei'nment, and subvert the government established by the constitution, by centering all powers in the Legislative department, and and making a despotism, instead of a free government where the powers are divided and given to separate departments, each acting in its appropriate sphere, as a check on the other ?
 

 Such, it seems to us, would be the result of the concession of the power assumed by the Legislature in the passage of the statute under consideration.
 

 The result is not avoided by the fact that the restraint on the courts, is confined, by the statute, to actions for debts and matter’s of contract, and that it is not absolute, but merely
 
 “
 
 until otherwise provided by law ” — for it is a question of power. If the Legislature has the power to impose this restraint on the courts until otherwise provided by law, it has the power to do so without the provision to remove the restraint when we have better times and it shall be easier for men to pay their debts; and, if it has the power to impose this restraint on the courts, in respect to matters of contract,
 
 *374
 
 it has the power to extend it to matters of tort, and then a man who is stronger than I, may take away my negro or my horse, or drive me out of my house, and the laws of my country will give me no redress, because the temple of justice is closed. A power to suspend or to abolish the administration of justice, cannot exist in a free government. Without law and tribunals to administer it, there can be no government; it is anarchy, which is worse than despotism ; and yet the power involved in the passage of the statute necessarily, and bylogir cal deduction, leads to that result.
 

 If there be such a power in the Legislature, we are, with all our boasted free institutions, infinitely behind the monarchy of England in respect to the protection of our rights of person and rights of property. Blackstone, the learned commentator on the constitution and laws of England, in vol. 1st, page 102, says, “ a third subordinate right of every Englishman is that of applying to the courts of justice for the redress of injuries. Since the law in England is the supreme arbiter of every man’s life, liberty and property, courts of justice must, at all times, be open to the subject and the law be duly administered therein. The emphatic words of Magna Oharta, are these,
 
 “ nulli negabimus aut differemus rectum ml justi
 
 tiam, and therefore every subject for injury done to him,
 
 in
 
 terris,
 
 in
 
 bonis,
 
 ml persona,
 
 by any other subject, be he ecclesiastical or temporal, without any exception, may take his remedy by the course of the law and have justice and right for the injury done to him, fully without sale, freely without any denial and speedily without delay.”
 

 Upon the whole, we are satisfied that without reference to the Constitution of the United States, or to that of the Confederate States, our State Constitution gives ample protection to its citizens against all encroachments on the part of the Legislature upon the rights of propert}7, and the reason why such prominence has been given to that clause of the Constitution of the United States, which prohibits laws impairing the obligation of contracts, is, that the courts found there a provision expressed in direct and positive terms, upon which
 
 *375
 
 it was more convenient to put their decision, than it was to refer to fundamental principles embraced in the Constitution of the several States although not expressed in words so direct and positive ; for, in truth, no government can be free, unless the Constitution provides for the protection of property, the due administration of the law and the independence of t£ the supreme judicial department.” Let the several motions for judgment and executions be allowed.
 

 Per Curiam,
 

 Judgment affirmed.