Error.

---

D. L. RUSSELL, Governor. v. H. W. AYER, State Auditor.

*Mandamus—State Officer—Performance of Duty—Constitutional Law—Statutes—Error in Statute—Taxation.*

1. Under subsections 1 and 2 of Section 3320 of *The Code*, which empower and require the Governor of the State to "supervise the official conduct of all the executive and ministerial officers," and to "see that all offices are filled and duties thereof performed, or in default thereof apply such remedies as the law allows," as well as under the general law, as announced in decisions of this Court, the Governor has the right to bring *mandamus* proceeding against the State Auditor to compel the performance of the ministerial duties prescribed by statute which do not involve any official discretion.

2. The equation of taxation being fixed by the Constitution, any sections or parts of sections of an act of the General Assembly which violate or disturb such equation are void, and the courts can lend no aid by judicial decision, but must declare the offending provisions void.

3. Sections 2 and 3 of Chapter 168, Acts of 1897 (Revenue Act), fixing the poll tax at $1.29 and the property tax at 46 cents on the $100 valuation, being in conflict with Section 1, Article V, of the Constitution, which provides that the poll tax shall be equal to the tax on $300 of property, are both void, and the executive department

cannot levy a poll tax at the constitutional ratio to the property tax fixed.

4. Sections 2 and 3 of Chapter 168, Acts of 1897 (Revenue Act), being void in so far as they violate the constitutional equation of taxation, the corresponding parts of Sections 2 and 3 of Chapter 116, Acts of 1895, are unrepealed and in full force and effect.

ACTION by Daniel L. Russell, Governor of North Carolina, against Hal. W. Ayer, State Auditor, for a peremptory mandamus, commenced in the Superior Court of WAKE county, and heard on complaint and demurrer before *Adams, J.*, at Chambers, in Raleigh, in April, 1896. The complaint was as follows: "The plaintiff, complaining, alleges —

"I. That he is Governor of North Carolina, and as such it is his duty to supervise the official conduct of all executive and ministerial officers and to see that the duties of all officers are performed, and in default thereof to apply such remedy as the law allows.

"II. That the defendant, Hal. W. Ayer, is Auditor of the State of North Carolina.

"III. The General Assembly of North Carolina, at its session of 1897, duly passed an act which was ratified on the 9th day of March, entitled 'An Act to Raise Revenue,' in words and figures (in part) as follows, to-wit:

" 'Section 1. That the taxes hereinafter designated are payable in existing national currency, and shall be assessed and collected under the rules and regulations prescribed by law and applied to the payment of the expenses of the State government, the appropriations to charitable and penal institutions, other specific appropriations made by law, and the interest on the four per centum consolidated debt of the State.

" 'Sec. 2. On each taxable poll or male between the ages of twenty-one and fifty years, except the poor and infirm whom the county commissioners may declare and record

fit subjects for exemption, there shall be annually levied and collected a tax of one dollar and twenty-nine cents, the proceeds of such tax to be devoted to the purposes of education and the support of the poor, as may be prescribed by law, not inconsistent with the apportionment established by section two of article five of the Constitution of the State.

" 'Sec. 3. There shall be levied and collected annually an *ad valorem* tax of twenty-two and two-third cents for State purposes, three and one-third cents for pensions, twenty cents for public schools, making forty-six cents on every one hundred dollars value of real and personal property in this State, and moneys, credits, surplus, reserve funds, undivided profits, investments in bonds, stocks, joint stock companies, or otherwise, required to be listed in 'an act to provide for the assessment of property and collection of taxes,' subject to exemptions made by law, and no city, town or other municipal corporation shall have power to impose, levy or collect any greater sum on real and personal property than one per centum of the value thereof, except by special authority from the General Assembly.'

"IV. That of the twenty-two and one-third cents levied for State purposes, five and one-sixth cents were levied to pay the interest on the four per centum consolidated debt of the State, which debt existed prior to the Constitution of North Carolina of 1868.

"V. That said act duly passed by both Houses of the General Assembly provided for the levy of a poll tax of one dollar and thirty-eight cents, but that by a mistake of the enrolling clerk the act as enrolled levied a tax on one dollar and twenty-nine cents.

"VI. That under article five of the Constitution of North Carolina the said capitation tax equal to property valued at three hundred dollars, to-wit: one dollar and thirty-eight cents, should have been levied.

"VII. That, as plaintiff is advised and insists, the General Assembly, having levied a tax on property of forty-six cents on the one hundred dollars worth of property, thereby fixed the amount of the capitation tax, and having undertaken to levy a capitation tax, such tax is by the Constitution fixed at one dollar and thirty-eight cents. That, therefore, such a tax in law has been levied.

"VIII. That it is by law the duty of the Auditor to prepare forms to be used for assessing and listing property for taxation by the assessors and list-takers in accordance with said act, and the Constitution—Article five, Section one— fixing the rate of taxation at forty-six cents on every one hundred dollars value of real and personal proprty, and one dollar and thirty-eight cents upon each taxable poll, and it is also his duty to transmit said forms to the clerks of the Boards of Commissioners of each county.

"IX. That the plaintiff has requested the said Auditor of the State to prepare such forms, and to observe the constitutional equation by fixing the capitation tax on each taxable poll at one dollar and thirty-eight cents, and to transmit the same as required by law. But that the said Auditor has refused to prepare said forms, fixing the capitation tax at one dollar and thirty-eight cents, upon the ground, as he claims, that it is his duty in preparing said forms to fix the said capitation tax at one dollar and twenty-nine cents.

"Wherefore, the plaintiff makes this application praying—

"1. That a peremptory writ of mandamus be issued out of this court, directed to the defendant, commanding him to prepare said forms to be used in assessing and listing property for taxation by the assessors and list-takers under the said act, fixing the capitation tax at one dollar and thirty-eight cents, and also commanding him to transmit

said forms to the clerks of the boards of commissioners of each county, as required by law.

"2. For other and further relief.

"3. For the costs and disbursements of this action."

The defendant demurred to the complaint on the ground that "the facts set forth in the complaint for mandamus do not entitle the plaintiff to the relief asked for therein."

His Honor overruled the demurrer and adjudged, "that a peremptory writ of madamus do issue out of this court, directed to the defendant, commanding him to prepare forms to be used for assessing and listing property for taxation by the assessors and list-takers according to law, fixing the rate of taxation at forty-six cents on every one hundred dollars value of real and personal property, and one dollar and thirty-eight cents upon each taxable poll, and to transmit said forms to the clerks of the boards of county commissioners of each county in the State."

*Messrs. C. L. Harris, J. W. Hinsdale, Cook & Greene,* for plaintiff.

*Messrs. Zeb V. Walser, Attorney General,* and *A. C. Avery,* for defendant.

MONTGOMERY, J. The General Assembly of North Carolina, at its session of 1897, in an act entitled : "An Act to raise revenue," laid the capitation tax at one dollar and twenty-nine cents, and a tax of forty-six cents on every one hundred dollars value of real and personal property. Section 1 of Article V of the Constitution, provides that "The General Assembly shall levy a capitation tax on every male inhabitant in the State over twenty-one and under fifty years of age, which shall be equal on each to the tax on property valued at $300 in cash, * * * and the State and county capitation tax combined shall never

exceed two dollars on the head." Upon the face of the Act of Assembly it appears at a glance that the equation fixed by the Constitution between the capitation tax and that on property has not been preserved. The Auditor of the State, who is required to prepare and send out to the several counties the forms to be used by the assessors and list-takers of property for taxation, deemed it his duty to follow the plain words of the act, and to place on the forms the capitation tax as fixed by the act, at one dollar and twenty-nine cents, and was at the commencement of this proceeding about to send the forms out to the various counties. The plaintiff, in whom is vested by the Constitution, the supreme executive power of the State, believing that the property tax having been levied by the General Assembly to the amount of forty-six cents on the one hundred dollars worth, and that body having undertaken to levy a capitation tax, though an erroneous one, the Constitution itself adjusts and fixes the capitation tax at one dollar and thirty-eight cents, notwithstanding the erroneous levy of $1.29 for that purpose, has brought this action (*mandamus*) to compel the Auditor to place the amount of the capitation tax on the forms at one dollar and thirty-eight cents—the amount of the tax laid by the act on three hundred dollars worth of property—instead of one dollar and twenty-nine cents as appears in the act. There is no allegation in the complaint of wilful or contumacious refusal on the part of the Auditor, the plaintiff simply alleging that the defendant's idea of what his duty under the law is is erroneous. There can be no serious question concerning the power of the Governor to bring an action of the nature of this one against the defendant, if the defendant had failed or refused to perform a specific duty expressly required of him by an Act of Assembly. The right to

bring such an action by the Governor is conferred upon him by sub-sections 1 and 2 of Section 3220 of *The Code.* By those sections he is empowered and required to "supervise the official conduct of all executive and ministerial officers," and to "see that all offices are filled and duties thereof performed, or in default thereof apply such remedies as the law allows."

Besides this express statutory authority for the commencement of *mandamus* proceedings against a public officer in cases where he refuses to perform a specific duty required of him by law, this Court in *Railroad* v. *Jenkins,* Treasurer, 68 N. C., 502, citing *Kendall* v. *U. S.*, 12 Pet., 524, said: "It is settled that, when an act of the legislative branch of the government directs an executive officer to do a specific act which does not involve any official discretion but is merely ministerial, * * * a *mandamus* will be ordered; and in *County Board* v. *State Board,* 106 N. C., 81, it was decided that an action could be maintained to compel public officers to discharge mere ministerial duties not involving an official discretion."

The plaintiff has performed his duty with the best interests of the State in view in commencing this proceeding, and the decision of this Court will no doubt be a great relief to the defendant.

The demurrer of the defendant raises the question whether or not those parts of Sections 2 and 3 of Chapter 168 of the Acts of 1897, entitled "An Act to raise Revenue," which fix the amount of capitation tax and the tax on property, are repugnant to the Constitution because of their violation of the constitutional equation between the tax on property and that on the poll. And if these parts of those sections are unconstitutional, then, of course, the act which the plaintiff seeks to have performed by the Auditor cannot be done, and the demurrer should have been sustained.

Section 2 of the act referred to fixes the capitation tax at one dollar and twenty-nine cents, without conditions and without reference to any other of its sections or provisions. There is, therefore, no room for enquiring into the intention of the law makers. It cannot be said that when they wrote "one twenty-nine," they meant "one thirty-eight." It must be presumed that they knew what they were doing and that they meant to do what they did. The act was perfectly regular on its face, had passed its several readings and was duly ratified, and no proof as to mistake or error can now be heard in this Court to contradict its provisons. *Carr* v. *Cooke*, 116 N. C., 223. So we arrive at the conclusion that upon the face of the act the Auditor's duty would be to send out the forms with the amount of the capitation tax fixed at one dollar and twenty-nine cents, the amount specified in the Act, if that portion of the Act is in accordance with Article V, Section 1 of the Constitution.

We will now discuss that part of the question.

The capitation tax under the Constitution can never exceed two dollars, and the tax on each head subject to taxation shall be equal to the tax on property valued at three hundred dollars. The position of the plaintiff in this action is that the language of the Constitution makes the tax on property the basis from which the capitation tax is calculated and determined; that one thing cannot be said to be equal to another thing, unless the other is clearly known and certain; and that, therefore, the tax on property is *first* to be levied and fixed before the capitation can be adjusted to fit it (the property tax) under the Constitution; that the General Assembly followed this course, placed the property tax at forty-six cents on the one hundred dollars worth, and by mathematical calculation apportioned the tax on property to the several purposes of the State necessi-

ties in detail, *i. e.*, twenty-two and two-third cents for State purposes, three and one-third cents for pensions, twenty cents for public schools; and that although that body, on the face of the Act, failed to preserve the constitutional equation when they levied the poll tax at one dollarl and twenty-nine cents, and the tax on $300 worth of property at $1.38, yet they nevertheless in the attempt to levy a poll tax, having fixed the tax on property at $1.38 on the $300 worth of property, the capitation tax is by force of the Constitution itself fixed at $1.38, and that therefore the same is to be read into the Act and deemed in law to have been levied.

The claim of the plaintiff means simply this: That although the General Assembly, in language entirely free from doubt, has violated the provisions of the Constitution by disturbing the equation of taxation, yet the Auditor can be compelled to give force to a law unconstitutional on its face, because the Constitution has fixed the equation. The Constitution does not levy any tax upon anything. That instrument simply provides that public revenue may be raised by taxation, and fixes the equation to be observed by the General Assembly between the poll and property taxes, and leaves the General Assembly, solely, the duty of levying the public taxes and the discretion of fixing the amount necessary, always keeping in mind the limitations prescribed. If the General Assembly should at any session levy a tax on property, but fail to levy a capitation tax, it could not be contended that the provisions of the Constitution in regard to the equation of taxation could supply the omission and read into the defective law a capitation tax equal to the property tax levied on $300 value of property. Such a section in a revenue law would be void because of the failure of the law makers to levy the taxes under the constitutional requirements. Neither can the Constitution

be invoked in a case like the one before us to fix the poll tax in a different amount from that prescribed in the act, on the alleged ground that, as the General Assembly had fixed the tax on property, therefore the constitutional provision by its own force applies its corrective influence, overrules the amount fixed by the General Assembly and adjusts the equation. The Constitution is a chart which must be consulted and followed, but in the matter of taxation it is absolutely indispensable that the General Assembly, by proper enactment, give life and effect to the provisions of the Constitution by making the levy and providing the machinery for collection. If the legislature fails to discharge its duty, there is no help. If in its action it disturbs the equation of taxation, the sections or parts of sections containing the violation are void, and the courts can lend no aid by judicial decision but must declare the offending provision of law void

In view of the great public interests concerned, we think it proper to say (though not necessary to a decision of this case) that while the parts of Sections 2 and 3 of the Act above referred to, which concern the amounts of the capitation tax, are void, because they disturb the equation between property and poll taxes, yet the remainder of the Act is valid; and that, although the revenue act of 1897 contains a clause which repeals all acts and parts of acts contrary to its provisions, yet, the parts of Sections 2 and 3 of the Act of 1897 being unconstitutional and void, it follows that those parts of Sections 2 and 3 of Chapter 116 of the Acts of 1895, which levy the amounts of capitation and property tax are unrepealed and are in full force and effect. The revenues which the treasurer will receive from the tax on property levied in 1895 of course will be less than they would have been under the levy of 1897, and the Treasurer will of course disburse the same for the various

purposes set out in Section 3 of the Act of 1897, *pro rata*, and according to law, the regular expenses for the conducting of the State government first to be considered.

There was error in the ruling of the judge below. The demurrer ought to have been sustained.

Error.

CLARK, J., dissenting: The Constitution, Article V., Sec. 1, provides: "The General Assembly shall levy a capitation tax on every male inhabitant of the State over twenty-one and under fifty years of age, which shall be equal to the tax on property valued at $300 in cash * * * and the State and county capitation tax combined shall never exceed two dollars on the head." It will be perceived by this that, as to *limitation*, the capitation tax is the standard, and a levy exceeding two dollars on $300 is invalid as to the excess, because the capitation tax, State and county, can never exceed two dollars. Opinion of Pearson, C. J., in *University* v. *Holden*, 63 N. C., 410, 412. But, as to the *equation*, the property tax is the standard. The Constitution says "the capitation tax shall *be equal to* the tax on property valued at $300." When it is required that anything shall be "equal to" something else, that makes the latter the standard.

The legislature always levies four kinds of taxes: the license taxes, usually called "Schedule B," and privilege taxes, usually known as "Schedule C," the property tax, and the capitation tax. The revenue act of 1897 does this and contains at its end this provision: "All laws and clauses of laws in conflict with this Act are hereby repealed." There is no contention that the "Schedule B" and "Schedule C" taxes of 1897 are not substituted for "Schedule B" and "Schedule C" taxes of 1895, the latter being repealed. The legislature of 1897 further saw fit to place the tax on property at

forty-six cents on the $100. This is in conflict with Section 3 of the Acts of 1895, Chapter 116, which places the property tax at forty-three cents on the $100, and as completely repeals it as the "Schedule B" and "Schedule C," of 1897 repeal those of 1895. There can be no question of the power of the legislature to fix the property tax at forty-six cents, and the courts have no power to set it aside. The Constitution makes the property tax in no wise dependent upon the poll tax or upon anything else, and the legislature has placed these two taxes in different and independent Sections of the Revenue Act. The power of the legislature to levy the property tax has only one limitation in the Constitution, that it shall not exceed $2 on $300 worth of property. The "Shedule B" and "Schedule C" taxes, and the property tax of 1897, being levied within the powers of the legislature, are all alike beyond the supervision of the courts, and are the only taxes of those kinds that are valid and subsisting, the taxes of those kinds levied by the previous Legislature being expressly repealed. The only tax remaining is the capitation tax. That, unlike the other two, is not left to legislative discretion, but by the express requirement of the Constitution is to be measured by the property tax. It "shall be equal to," says the Constitution, in words too plain to be misunderstood, "the tax on $300 of property." This provision was inserted in the Constitution of 1868 as a guarantee to the property holders of the State that they would not be oppressed by inordinate taxes laid by representatives elected by the newly enfranchised blacks, who had small property to be taxed and whose representatives might otherwise be tempted to levy excessive taxes on property (Rodman, J., 63 N. C., at page 427), and for the nearly thirty years since this breakwater was put into the Constitution, it has never been lost sight of.

The verified complaint in this action avers that, the bill

as actually passed by both houses respected the constitutional provision, and, in fact, placed the poll tax at $1.38, but that in some unexplained manner, Section 2 of the bill as ratified had been altered to read "$1.29 poll tax." The demurrer admits the allegation to be true, but we cannot consider it, for the majority opinion in *Carr* v. *Coke*, 116 N. C., 223, has held that, conceding such to be the fact, the courts are bound by the signatures of the speakers. We must, therefore, take it, as beyond question, that the legislature passed the act in the form in which it is enrolled and printed—placing the property tax at forty-six cents and the poll tax at $1.29. Does that invalidate the property tax? There is not a word in the Constitution to give us power so to declare. There is not a word in that instrument making the property tax dependent upon any thing else. Indeed, the property and the capitation tax are in different sections of the act, as usual. Nor is there anything in the Constitution to restrict the discretion of the legislature to fix the amount of the property tax save that it must not exceed the limit of $2 on $300 of property, and that has not been done. Whence, then, has the Court the power to read into the Constitution any other control over the property tax, or to declare it void, except as to an excess above the limitation? As to the poll tax, the Constitution is different. It says *it shall be equal* to the property tax on $300. If it is not, then the capitation tax is unconstitutional, and we should so declare it. It is surely illogical when the legislature has levied a property tax clearly within its power, and which is not to be measured by anything, to declare it unconstitutional because another tax in another clause of the act, which must be measured by the property tax, does not comply with the standard marked out by the Constitution. .

The Constitution requires that "the General Assembly shall levy a capitation tax on every male inhabitant over twenty-

one and under fifty years of age." This has been done. It further provides that such capitation tax "shall be equal to the tax on property valued at $300." This has not been done. As the Constitution is the higher law and more powerful than a simple enactment of the legislature, it is the duty of the court to see that the Constitution is observed and to direct the Auditor, as prayed, to print in his blanks the poll tax (which the legislature did not fail to levy) at a rate equal to that which the legislature has levied on $300 of property, for the Constitution, greater than any legislative enactment, has decreed that such shall be the case as long as the Constitution itself exists. The courts cannot control the legislature in a matter resting in legislative discretion. But when that body has no discretionary power, and has fixed a standard by which something else must be measured, the courts will require conformity to the standard.

It is a rule of construction always recognized, "*ut res magis valeat quam pereat.*" Applying that maxim to this very statute, no objection has been urged as to any part thereof except that which fixes the rate of taxation. On observing that, we find that the "Schedule B" and "Schedule C" taxes and the property tax are unquestionably valid. We find that the legislature has also obeyed the constitutional mandate by levying a capitation tax. But as to this latter, we find that it is defective in that it does not come up to the requirement that it "shall be equal to the property tax on $300." The simple duty asked of the court is to say to the auditor, "Obey the Constitution, and not the act of the legislature." While placing in his blanks the certainly valid property tax of forty-six cents, the Auditor should therefore be commanded to write in the column for capitation tax the $1.38 required by the Constitution, and not the $1.29 provided by legislative enactment, an enactment which from comity to a co-ordinate

120—25

department we would presume to be due to an inadvertence or the act of some subordinate, even if such fact did not appear in the complaint and was not admitted by the defendant. The legislature of 1897 was entrusted with fixing the rate of taxation. They were within their power when they fixed the property tax at forty-six cents and repealed the 1895 levy of forty-three cents. They were unmindful of the constitutional restriction if they intentionally fixed the poll tax at $1.29, and the remedy is to conform the rate of the levy for poll tax to $1.38, as required by the Constitution, and not a judicial repeal of the property tax of 1897, and a judicial re-enactment of the "poll tax of $1.29, and property tax of forty-three cents," as levied by the legislature of 1895. That levy was found insufficient in the judgment of the legislature of 1897, who repealed it by express enactment. The courts have no power to declare the property-tax levy of 1897 void, and to revive that of 1895. The tax levy of 1897 was admitted on the argument to be already largely insufficient to meet the appropriations made for public purposes. We judicially know the tax valuation of the property of the State and the number of polls. The loss of 3 cents per $100 on the property tax and 9 cents on the poll, caused by a reverter to the taxation of 1895, will cause in this year and the next an additional deficit of $150,000 unless a special session of the General Assembly should be called, at great expense, to correct the inadvertence of some clerk. When such consequences can be averted by taking the unquestionably valid levy of 46 cents made on property by the legislature, and directing the Auditor to observe the unmistakeable requirement of the Constitution by inserting under the poll tax, levied by the legislature, an amount which "shall be equal to the property tax on $300," it would surely seem that it should be done. It is a matter in which the

legislature had no discretion.   If it had, the court could
not control it.   They had a discretion as to the property
tax, and therefore the court has no power to set it aside,
nor call into being a property tax enacted by another legis-
lature, and which this legislature has repealed.   But as to
the poll tax, when the legislature fixed the property tax,
the Constitution, more powerful than the legislature, fixed
the poll tax at a sum ''equal to the property tax on $300.''
The unconstitutionality is not in fixing the property tax, but
in the rate of the poll tax.   It is the latter, not the former,
which should be disregarded' and set aside.   To set aside
the property tax of 46 cents as to which the legislature
had discretionary power, and to fail to make the poll tax,
as to which the legislature had no discretion, conform to
the Constitution, is for the court to intervene where it has
no power, and to fail to do so where it has; it is to "do
those things we ought not to do and to leave undone those
things we ought to do.''   When the tax levy exceeds $2
on the poll, the whole tax is not unconstitutional, but only
the excess over the limitation.   In like manner, when the
equation is not observed, the power of the court is not to
set aside the whole of the tax levy nor the standard—the
property tax—but to observe the Constitution by requiring
the poll tax to be entered on the tax list at a rate ''equal
to the tax on $300 of property.''

The learned and able counsel for the defendant frankly
admitted that, if the legislature had omitted to levy any
poll tax, the court could enforce the constitutional guaran-
tee by a mandamus to the Auditor requiring him to place
on the tax list the poll tax ''equal to the tax laid on $300
of property.''   If this were not so, the constitutional pro-
vision, instead of being a guarantee to property owners, the
purpose for which alone it was placed in the organic law,
would be a nullity and a delusion.   If the Constitution had

contained a provision—"the poll tax shall be $1.38"—tne
court would command the Auditor to put that upon the tax
list whether the legislature should repeat it in the Revenue
Act or not.   If the legislature should venture to put it in
as "$1.29 poll tax" this would not repeal the constitutional
provision, nor would it render void any other tax.   So,
when the Constitution requires the legislature to fix the
property tax, which it does at 46 cents, then the Constitu-
tion *eo instanti* fixes the poll tax at $1.38 as imperatively
as if that sum were named in the Constitution.   What
harm can come from enforcing a constitutional provision as
to a matter not left to legislative power or discretion?

Among the many cases recognizing self-executing consti-
tutional provisions, may be cited the following: *Reynolds* v.
*Taylor*, 43 Ala., 420; *Miller* v. *Marx*, 55 Ibid., 322; *Wood-
ward* v. *Cabaniss*, 87 Ib., 328; *McDonald* v. *Patterson*,
54 Cal., 245; *People* v. *Hoge*, 55 Ib., 612; *Donahue* v.
*Graham*, 61 Ib., 296; *Oakland v. Hilton*, Ibid., 69 Cal.,
479; *State* v. *Woodward*, 89 Ind., 110; *Hills* v. *Chicago*,
60 Ill., 86; *People* v. *Bradley*, Ibid., 398; *People* v. *Mc-
Roberts*, 62 Ibid., 38; *Kine* v. *Defenbaugh*, 64 Ibid., 291;
*Mitchell* v. *Ill.*, 68 Ib., 286; *Law* v. *People*, 87 Ibid., 385;
*Cook Co.* v. *Chicago*, 125 Ibid., 540; *Washingtonian Home*
v. *Chicago*, 157 Ill., 414; *Beard* v. *Hopkinsville*, 95 Ky.,
239; *Thomas* v. *Owens*, 4 Md., 189; *Beechy* v. *Baldy*, 7
Mich., 488; *Willis* v. *Mabon*, 48 Minn., 40 (citing many
other Minnesota cases); *Green* v. *Robinson*, 5 How. (Miss.),
80; *Glidewell v. Hite*, Ibid., 110; *Brien* v. *Williamson*,
7 How. (Miss.), 14; *Schools* v. *Patten*, 62 Mo., 444; *ex
parte* Snyder, 64 Ib., 58; *Householder* v. *Kansas City*, 83
Ibid., 488; *State* v. *Weston*, 4 Neb., 216; *State* v. *Bab-
cock*, 19 Ibid., 150; *Bass* v. *Nashville*, Meigs (Tenn.), 421;
*Yerger* v. *Rains*, 4 Humpn (Tenn.), 259; *Friedman* v.
*Mathis*, 8 Heisk. (Tenn.), 488; *Johnson* v. *Parkersburg*, 16

W. Va., 402; *Blanchard* v. *Kansas City*, 16 Fed. Rep., 444; *McElroy* v. *Kansas City*, 21 Ib., 257; Cooley Const. Lim. (6th Ed.), 99, 100.

The power to issue a mandamus to the State Treasurer to execute an ordinance of the convention, notwithstanding subsequent legislation, was held in *Railroad* v. *Jenkins*, 65 N. C., 173. *Mandamus* to the Treasurer to discharge a purely ministerial duty was recognized in *Railroad* v. *Jenkins*, 68 N. C., 5"2, and as to the Governor, in *Cotten* v. *Ellis*, 52 N. C., 545, and as to other officers, *County Board* v. *State Board*, 106 N. C., 81, though of course it will not issue when any discretion by the officer *is* to be exercised. *Burton* v. *Furman*, 115 N. C., 166; *Boner* v. *Adams*, 65 N. C., 639; *Brown* v. *Turner*, 70 N. C., 93. But when the Constitution prescribes that the poll tax is to be equal to that levied on $300 of property, and the latter is fixed by the legislature at 46 cents, as they had a right to do, then by a standing constitutional enactment, which no legislature can repeal or impair, the Auditor should be commanded to place in the same tax list $1.38 poll tax." This is not a matter of discretion in the Auditor. Nor indeed with the legislature; the neglect or inadvertence of that body will not repeal this constitutional provision when this would not have been accomplished if they had directly so enacted. Nor will their neglect in section 2 of the act to provide the proper rate of poll tax invalidate the property tax properly, correctly and legally levied in section 3.

It is a far greater exercise of power by the court and a far greater interference with the legislative authority to declare void the property tax, which has been fixed within the undeniable limits of legislative power, and to declare in force a property tax of a previous legislature, which has been repealed, than, respecting these discretionary exercises of legislative power, merely to require the poll tax, as

to which the legislature can exercise no discretion, to conform to the Constitution. Besides, if the court can assume the power to set aside the property tax, it must do the same as to Schedules "B" and "C," for the legislature is presumed to exercise the power of taxation to provide for the legitimate needs of the State government, and it has fixed those schedules with knowledge that the property is 46 cents. If the property tax is reduced to 43 cents, contrary to legislative enactment, then Schedules "B" and "C" should have been higher. To judicially re-enact the tax laws of 1895 is to re-establish a taxation which the legislative department has changed because unsatisfactory and insufficient, and has expressly repealed. Nor can the court direct how the Treasurer shall *prorate* the fund. The legislature alone has power to direct the disbursement and application of funds.

There are many instances in which the courts have required a levy of taxes which had been omitted by the legislature, and even where the legislature had passed an act against their power forbidding it. 1 Hare Constitutional Law, 647, and numerous cases there cited; Cooley on Taxation, 733, 735; High Extraordinary Remedies, Sec. 124A. The power to grant a mandamus to the Auditor to place a tax charge on the lists sent out by him was tacitly admitted, though not expressly decided, in *Belmont* v. *Reilly*, 71 N. C., 260. The court recognized the cause of action by not dismissing the proceeding, which the many eminent counsel appearing for the defendant would surely have moved for if there had been the least doubt on the subject. The judge below correctly held that the mandamus should issue as prayed for.

FURCHES, J., concurring: This appeal involves a constitutional question of much importance and, while I concur in

the judgment of the court, I deem it not improper that I should state briefly my reasons for so concurring.

Article V., Sec. 1, of the Constitution of N. C., provides that, "The General Assembly shall levy a capitation tax on every male inhabitant of the State over 21 and under 50 years of age, which shall be equal on each to a tax on property valued at $300 in cash, * * * and the State and county capitation tax combined shall never exceed $2 on the head."

The legislature of 1897, in an "Act to raise Revenue," enacted that "on each taxable poll, or male, between the ages of 21 and 50 years, * * * there shall be annually levied and collected a tax of $1.29. And in the next section of the same Act it is provided that "there shall be levied and collected annually an *ad valorem* tax, * * * making a tax of 46 cents on every $100 value" of property in the State. This presents the question for our consideration and determination.

The Constitution says the poll tax shall be equal to the *ad valorem* tax on $300 valuation of property—*equal to*—no more and no less; or you may turn it over and say the *ad valorem* tax on $300 valuation of property shall be *equal to, no more, no less*, than the tax on one poll, and you have precisely the same result—the equilibrium established by the Constitution between taxable property and taxable polls. They must be absolutely *equal*. In this Act the poll tax is fixed at $1.29. This is plainly written in the Act and cannot be construed to mean anything else, as it refers to nothing else and depends upon nothing else. The property tax is as certainly fixed by the Act as is the poll tax. It is declared that this tax shall be 46 cents on the $100 valuation of property. Three times 46 cents is $1.38: and as $1.29 is not equal to $1.38, the equation required by Article V., Sec. 1, of the Constitution has not been

observed.    These provisions of the Act, and Article V., Sec.
1, of the Constitution do not stand together.    They are in
conflict, and one or the other must give way; and the
Constitution being the superior, the legislative Act must
give way.    Then what shall we do when we find an Act of
the legislature in conflict with the provisions of the Consti-
tution?    What can we do but to declare it void and of no
effect?    We find that this is what was done in *University*
v. *Holden*, 63 N. C., 413; *Barnes* v. *Barnes*, 53 N. C.,
366; *Hoke* v. *Henderson*, 15 N. C., 1; and in every case
to be found in the judicial history of this State.    I do not
hesitate to say that not one can be found where the court
has not declared the Act, or that part of it found to be in
violation of the Constitution, to be void.

But in this case it is contended, to do this—to declare
this part of the Act void—to do what every court in this
State without a single exception has done, "is judicial leg-
islation."    And, as I am free to admit, indeed, I declare
that we have no power to legislate.    Then, as we cannot
legislate the offending act into constitutional shape, and
cannot declare it void without "judicial legislation," what
can we do?    Our mouths are closed, and we should be as
silent as the tomb.    This contention would utterly destroy
the powers of the court on any constitutional question.
I can agree to no such position.

But, again, it is contended that the Constitution requires
that the equation between the poll tax and the *ad valorem*
tax on $300 should be preserved and that, as this has not
been done in the Act of 1897, this court should proceed to
write into the Act $1.38 on the poll instead of $1.29.    And
it is contended that this would not be "judicial legisla-
tion," while it would be judicial legislation to declare it
void.    I must again say that I cannot assent to this propo-
sition.    To assent to these two propositions—that to de-

clare the Act void would be judicial legislation, but for us to make the poll tax $1.38 instead of $1.29 would not be judicial legislation—would be to destroy every idea of logical deduction I have ever had.

It is contended that the property tax is the standard and the poll tax must be made to conform to this. Chief Justice Pearson, in *University* v. *Holden, supra,* says just the contrary—that the poll tax is the standard by which the equation is to be fixed. What more constitutional warrant have we for saying the property tax governs the poll, than we have for saying the poll governs the property? If the tax on the poll shall be equal to the tax on $300, why does it not equally follow that the tax on $300 shall be equal to the tax on one poll? Judge Pearson thought so in *University* v. *Holden, supra,* and I can see no reason why each is not equally dependent upon the other.

But suppose this contention is correct—that the property tax governs. What difference does it make? They are still in conflict with the Constitution, just the same. And we have no more power to change and amend the Act if the property tax governs than we would have if the poll tax governed. The result is the same, whether regulated by one or the other—a violation of the Constitution.

It is contended that, if the court declares Sections 2 and 3 of the Act of 1897 unconstitutional and void, this destroys and renders the whole Act void. I have always understood the law to be otherwise; that it was declared by this court as early as the 4 N. C., 428, in *Berry* v. *Haines,* that one or more sections of an Act might be unconstitutional and void, and the rest of the Act constitutional and valid. This opinion has been followed and approved in *McCubbins* v. *Barringer,* 61 N. C., 554, *Johnson* v. *Winslow,* 63 N. C., 552, and in other cases.

RUSSEL *v.* AYER.

It is further contended that Sections 2 and 3, though unconstitutional, repeal the corresponding sections of the Revenue Act of 1895, and the court cannot by "judicial legislation" re-enact that part of the Act of 1895. I most thoroughly agree to the proposition that this court cannot legislate the Act of 1895 or any other act into life, that has been repealed. The court, as I maintain, cannot legislate at all. But if the Act of 1895, or any part of it, has not been repealed, it is in force, not by judicial legislation of this court, but by force of *legislative* legislation. The Act of 1895 is in force unless it has been repealed. The only Act that it is contended repeals the Revenue Act of 1895, is the Revenue Act of 1897. This Act of 1897 repeals all Acts and clauses of Acts in conflict with the provisions of the Act of 1897. And I admit that sections 2 and 3 of the Revenue Act of 1897 are in terms, in conflict with the corresponding sections of the Act of 1895. And if these sections in the Act of 1897 are law, then I admit the corresponding sections of the Act of 1895 are repealed, and that it would be a gross and flagrant act of "judicial legislation" for this court to "re-enact them." But this all depends upon the fact as to whether Sections 2 and 3 in the Revenue Act of 1897 are or ever have been law.

If they are unconstitutional, they are absolutely *void*, are not, and never have been, any part of the law of this State.

Mr. Cooley says: "Indeed the term *unconstitutional law*, as employed in American jurisprudence, is a misnomer and implies a contradiction; that enactment which is opposed to the Constitution being in fact no law at all." Cooley Const. Lim. 6th Ed., p. 5. Therefore, Sections 2 and 3 of the Revenue Act of 1897 never have been the law. They have not and cannot repeal any law heretofore enacted. And Sections 2 and 3 of the Revenue

Act of 1895 are still the law by virtue of the legislature, and not by any judicial legislation on the part of this court.

But it is further contended that even if Sections 2 and 3 of the Revenue Act of 1895 be re-enacted and declared in force, there would be a loss of revenue to the State, estimated from $50,000 to $150,000 annually. I know the same amount of revenue cannot be raised under Sections 2 and 3 of the Revenue Act of 1895, that could have been raised under Sections 2 and 3 of the Revenue Act of 1897, if the poll tax had been put at $1.38 so as to make the Act constitutional. But I have no means of knowing what the difference would be, and, for the purposes of my opinion in this case, I do not want to know. I cannot allow my judgment upon a constitutional question to depend upon the amount of revenue an act will or will not produce. This kind of argument was brought to bear upon Chief Justice Ruffin in the now celebrated case of *Hoke v. Henderson, supra,* to which that great judge replied as follows : "To a court, the impolicy, the injustice, the unreasonableness, the severity, the cruelty of a statute by themselves merely, are and ought to be urged in vain. The judicial function is not adequate to the application of those principles, and is not conferred for that purpose. It consists in expounding the rules of action prescribed by the legislature, and when they are plainly expressed, or plainly to be collected, in applying them honestly to controversies arising under them, between parties, without regard to the parties or the consequences." "In the Act under consideration, as far as it concerns the controversy between these parties, there is no ambiguity; the words are plain, the intention unequivocal, and the true exposition infallibly certain. We cannot, under the pretence of interpretation, repeal it and thus usurp a power never confided to us, which we cannot usefully exercise, and which we do not desire." Chief

Justice Pearson says, in *Barnes* v. *Barnes*, *supra*, at p. 369, the court being pressed with the policy of what was called the "stay law," passed as it was contended for the protection of the people, engaged in war, in response to the question of policy: "Whether in the present condition of the country the statute be expedient, is a question of which we have no right to judge. Our province is to give judgment on the question of the constitutional power of the legislature to pass the statute." In both cases the Act was declared unconstitutional and void.

I feel that I will be pardoned for making these lengthy quotations from the opinions of two of the Chief Justices who have left behind them reputations at least equal to any of the other great judges who have presided over this court. I quote them to show that the court is not guilty of judicial legislation in rendering its judgment in this case, and has only done what has always been done when the court declared an Act of the legislature unconstitutional.

It is said there is no limitation except that the poll tax shall never exceed $2, and that there is no limit on the property tax except that $300 worth shall never exceed $2; and that, as the property tax levied in the Act of 1897 does not amount to $2, it is constitutional. This cannot be true as a proposition of law; it leaves out of consideration the question of equation. When the poll tax does not amount to as much as $2, its limit is as much a limitation on the property tax as if the amount of the poll tax had been written in the Constitution. That is, when the poll tax was fixed at $1.29, the tax on $300 valuation of property can no more exceed $1.29 than if that amount had been written in the Constitution; and any levy of taxes in excess of $1.29 is *ultra vires*, in conflict with the Constitution and void. There is error in the judgment appealed from.

DOUGLAS, J., dissenting: There seems to be no question that mandamus is the proper proceeding in this matter, and that this court has full jurisdiction of all the questions involved.

The Revenue Act of 1897 provides, in Section 2, that "on each taxable poll or male between the ages of 21 and 50 years, except the poor and infirm whom the County Commissioners may declare and record fit subjects for exemption, there shall be annually levied and collected a tax of *one dollar and twenty-nine cents*," * * * and in Section 3, that "there shall be levied and collected annually an *ad valorem* tax of twenty-two and two-thirds cents, for State purposes, three and one-third cents for pensions, twenty cents for public schools, making *forty-six cents* on every one hundred dollars value of real and personal property in this State." * * * The Constitution provides in Section 1, Article V., that "the General Assembly shall levy a capitation tax on every male inhabitant in the State over twenty-one and under fifty years of age, which shall be equal on each to the tax on property valued at $300 in cash, * * * and the State and county capitation tax combined shall never exceed two dollars on the head."

It is evident that this section creates two standards, one of limitation and the other of equation. As the poll tax is the only one having any limitation affixed to it, it is of necessity the standard of limitation, and as it must be *equal* to the *ad valorem* tax on $300 of property, it is *measured* by the latter, which of equal necessity becomes the constitutional standard of equation. These conclusions seem to me in entire harmony with the principles laid down in *University* v. *Holden*, 63 N. C., 410, a leading case remarkable not only from the full and able discussion on all the principles involved, but from the further fact that all five judges filed separate opinions, in which apparently not

a single proposition received the full concurrence of the entire court. The expression of Judge Pearson, that "the tax on poll is the standard," occurs immediately after a discussion of the *limitation* and should be construed in connection therewith. From this case as well as all the other authorities it is evident that the standard of equation must be strictly maintained until the limitation of two dollars upon the poll shall have been reached, and that thereafter any extraordinary taxation for State and county purposes must be levied upon property alone. In the case at bar the limitation has not ben reached, but it is admitted that the equation has not been preserved. The *ad valorem* tax levied on property is 46 cents on each $100, while the capitation or poll tax is only $1.29 instead of $1.38 as required by the constitutional equation. We are, therefore, brought to the vital question as to what was the meaning and intent of the legislature, as the *legislative* intent is the basis of the construction of all statutes.

It is apparent that the General Assembly intended to put the property tax at 46 cents, as this amount is not only expressly stated in the Act, but is also the correct sum of the different amounts specifically set forth in the Act for the purposes therein expressed. There is no practical possibility of mistake or clerical error where the sum of three specified amounts is set out with mathematical correctness. Having thus arrived at the evident legislative intent as to the *standard* of equation, we are called upon to construe the same intent as to the capitation tax. While there seems to be a technical distinction between the terms "interpretation" and "construction," the latter being perhaps the more comprehensive, they are so alike in their practical results and are used so interchangeably, as to have become almost syonymous.

I must respectfully dissent from the opinion of the court where it says "There is, therefore, no room for inquiring

into the intention of the law makers. It cannot be said that where they wrote $1.29 they meant $1.38. It must be presumed that they knew what they were doing, and that they meant to do what they did.'' If this be true, then they simply meant to violate the Constitution. Sure ly there must be ''room for inquiry into the intention of the law makers,'' when the *literal* meaning of the Act is utterly inconsistent with any *lawful* intention. It is undoubtedly the legal presumption that the law makers know the organic law, but it is equally the presumption that they do not intend to exceed their powers. Black Int. Laws, Sec. 42; Endlich on Int. Stat., Sec. 178; Sutherland on Stat. Const., Sec. 331. The Constitution is binding equally upon every citizen of the State, no matter how lowly his condition or exalted his position, and we cannot for a moment presume that any legislator would, for personal or political considerations, knowingly do or permit any act in violation of that sacred instrument which he had solemnly sworn to support. This criticism is not captious, as it is the very essence of this opinion that an unconstitutional intent cannot be imputed to the legislature. I am not disposed to question the first rule laid down by Vattel and so universally approved, that ''It is not allowable to interpret what has no need of interpretation,'' but his 15th and 16th rules of construction have been equally approved, which are as follows: ''15. Every interpretation that leads to an absurdity ought to be rejected. 16. The interpretation which renders a treaty or statute null and void cannot be admitted; it is an absurdity to suppose that, after it is reduced to terms, it means nothing.'' See also *Endlich*, *supra*, Sec. 264; *Black*, *supra*, Sec. 48; *Oates* v. *Bank*, 100 U. S., 239. The rule that statutes should be construed *ut magis valeat quam pereat* that it shall *prevail* rather than *fail*, has become axiomatic, and needs no citations

from the long line of authorities. As it is evident that a literal interpretation of the words of the statute will lead inevitably to a nullificaton of its most important provisions and the stultification of its makers, we must look to other rules of construction. Blackstone tersely says that, to interpret a law, we must inquire after the *will* or *intention* of the maker, which is collected from the *words*, the *context*, the *subject matter*, the *effects* and *consequences*, or the *spirit* and *reason* of the law. This rule, with more or less of amplification, is practically of universal acceptance. Let us apply it to the Statute under construction. We have seen that the words cannot be strictly followed. From the *context* we see that it was the unquestionable intention of the legislature to put the *ad valorem* tax on property at 46 cents, and, therefore, its only possible *legal* intent must have been to place the capitation tax at three times that amount, which is $1.38. This amount alone will meet the constitutional equation, and exactly corresponds with the specific levies in the Act itself. The *subject matter* of the Act is *taxation* by which to raise sufficient revenue for the expenses of the State. All *revenue* acts are in *pari materia* with the *appropriation* Acts, as the one are necessarily dependent upon the other. In the absence of an accumulated surplus, of which there is no suggestion, the State cannot pay out what it does not collect. As we know that the appropriations have been largely increased, we must presume a legislative intent to give legal effect to its increased levies, which can be done only by making the capitation tax $1.38.

The *effects* and *consequences* of the construction placed upon this Act by the court will be of the gravest nature. The loss to the State will be over $75,000 a year, the greater part of which will fall upon the common schools, the higher institutions of learning and the asylums. The

RUSSELL v. AYER.

treasurer, in the face of a bankrupt treasury, will be compelled to refuse payment of appropriations lawfully made by the General Assembly and essential to the welfare of the State.

We finally come to the *reason* and *spirit* of the law. This is what is known as the Revenue Act, passed in accordance with the fixed custom of our biennial legislative sessions, and was intended to raise, by proper methods of taxation, revenue sufficient for the purposes of the State, and to readjust the taxes in accordance with the increased appropriations and reassessment of taxable property. As it is entirely for public purposes and of the highest public importance, it is more reasonable to suppose that the legislators intended to effectuate its provisions by fixing the capitation tax at the constitutional ratio of $1.38, rather than to place upon the Statute books a law fatally defective in its essential features, which would accomplish no practical purpose save to remain as a monument to their incapacity or bad faith. It is certainly not within the *spirit* of the law that its construction should be simply its nullification. And why is it unreasonable to say that $1.29 is a merely clerical error, and was intended for $1.38, as is alleged in the complaint and admitted by the demurrer? Such a correction, for which we have ample precedent, would preserve the integrity of the law and violate no constitutional or statutory provision. "Exceptional or Presumptive Construction," resorted to for the purpose of effectuating the legislative will, permits the interpolation, elimination, modification and transposition of words, dates and figures, when justified by clear implication. *Endlich, supra*, Secs. 298 to 304; *Black, supra*, Secs 37 to 54; *Sedgwick, supra*, p. 298; *Sutherland, supra*, Secs. 222, 223, 230.

A few examples will suffice: Where a Statute provided

120—27

fur an indictment "on conviction" of bribery, the words
"on conviction" were eliminated.  *U. S.* v. *Stern,* 5
Blatchford, 512.  In a Statute intended to confer jurisdic-
tion, the word "not" which, if retained, would have ren-
dered the Act meaningless, was eliminated.  *Chapman* v.
*State,* 16 Texas App., 76.  Where an amendatory Act re-
ferred to the date, title and subject matter of a former Act,
the erroneous date and title held immaterial.  *Madison* v.
*Reynolds,* 3 Wis., 287.  "An Act passed in 1839, Ch.
205," was held to mean the Act of 1838.  *Pue* v. *Hetzell,*
16 Md., 539.  The "act of 17 March, 1836," was held to
mean 16 June, 1836.  *Bradbury* v. *Wagenhurst,* 54 Pa.
St., 180.  An amendment referring in terms to Section
293 of an earlier act was construed as referring to Section
296, the alternative of such a construction being the nulli-
fication of the amendment.  *People* v. *King,* 28 Cal., 265.
"And" is construed to mean "or" and *vice versa* in num-
berless cases.  The plural was taken for the singular; the
word "venue" for "venire;" "Dunn's Mills" for "Dennis
Mills;" "South" for "North;" "final" judgments for
"penal" judgments; "*ad respondendum*" for "*ad satisficien-
dum;*" "1st Monday in July" for "1st day of July;" "4th
Monday" for "5th Monday," &c.  *Endlich, supra,* 319;
*Black, supra,* Secs. 37, 39, 40, 48; Am. and Eng. Enc., p.
421.  In *Bird* v. *Comm.* (Ky.), 24 S. W. Rep., 118, an Act
requiring that the "width" of the macadam on a turnpike
should not be less than 8 inches nor more than 15 inches
was held to apply to the "depth" and not to the "width"
of the macadam.  Where a penalty was fixed at "not less
than *one* nor more than *three hundred* dollars," the word
"hundred" was interpolated by construction so as to make
the minimum penalty one hundred dollars.  *Worth* v.
*Peck,* 7 Pa. St., 268.  If the Supreme Court of Pennsyl-
vania could raise the expressed amount in a Statute *ninety-*

*nine dollars*, why cannot we raise *nine cents* to maintain the equation and save the Statute?   Such was the controlling construction adopted by the Supreme Court of the United States in construing the so-called "Alien Contract Labor Law," *Rector, &c.*, v. *U. S*, 143 U. S., 57, in which the court says: "It is a familiar rule that a thing may be within the letter of the Statute and yet not within the statute, because not within its spirit nor within the intention of its makers."   It should be remembered that the oft quoted decision of Lord Tenderden in *King* v. *Inhabitants of Barham*, 8 Barn. & C., 99, has no application to this case.   As England has no written Constitution, so the ordinary English statute can have no constitutional construction.   With us, the maxim, *Ita lex est scripta*, applies rather to the Constitution than to the statute, as the former is the superior and controlling instrument.

In *Bank* v. *Commissioners*, 119 N. C., 214, this court, distinguishing *Carr* v. *Coke*, says: "This case has no analogy to *Carr* v. *Coke*, 116 N. C., 223.   That merely holds that where an Act is certified to by the speakers as having been ratified it is conclusive of the fact that it was read three several times in each House and ratified.   Const. Art. II, Sec. 23.   And so it is here: The certificate of the speakers is conclusive that this Act passed three several readings in each House and was ratified.   It does *not* certify that this Act was read three several days in each House and that the yeas and nays were entered on the journals.   The journals were in evidence and showed affirmatively the contrary."

I am clearly of the opinion that the legislature intended to fix the capitation tax at $1.38, as alleged and admitted in the pleadings; that it so appears from the entire Act itself, and that it should be so construed by this Court. I will cite only three more authorities which seem pecu-

liarly fitting to this case: Coke lays down the maxim *Lex semper intendite quod convenit rationi;* Lieber, in his work on Hermeneutics, says "There can be no sound interpretation without good faith and common sense." In *Graham v. Railroad,* 64 N. C., 631, Pearson, C. J., speaking for the court, says: "This *resume* is made in order to show that the word 'venire' in the Acts of 1868-9, Ch. 527, is used in the sense of 'place of trial,' adopting the idea of the Code of Civil Procedure. The word is inartificially used and the draftsman was not an expert in technical terms, *but it is the only construction by which to make any sense of it, and the court must adopt it.*" Upon these eminent authorities and my own clear conviction, I am forced to respectfully dissent from the opinion of the court, and adopt the only construction which, in my opinion, is not only consistent with the Constitution of our State, but equally so with the spirit of her laws, the honor of her legislators and the welfare of her people. I think the judgment should be affirmed.